WO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Laura R Hanson, et al.,

        Plaintiffs,

v.

Arizona Financial Credit Union,

        Defendant.

No. CV-23-01849-PHX-SMM

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 44). Also, before the Court are Plaintiffs' Motion to Strike Leading Questioning (Doc. 96), and Defendant's Motion to Strike Reply and Motion for Attorney Fees (Doc. 100). The motions are fully briefed. (Docs. 44, 45, 90, 96–100). For the following reasons, the Court denies with prejudice Plaintiffs' Motion to Strike, grants Defendant's Motion to Strike, denies without prejudice Defendant's Motion for Attorney Fees, and grants in-part and denies in-part Defendant's Motion for Summary Judgment.

## I.    MOTION TO STRIKE LEADING QUESTION

Plaintiffs moved the Court to strike an alleged leading question at the August 22, 2025 hearing. (Doc. 96). Plaintiffs claim that during the hearing the Court asked Plaintiffs "a 2 minute phone call is not overtime…wouldn't you agree?".[1] (Doc. 96 at 3). However, the Court never asked Plaintiffs the alleged leading question. (See Doc. 98-1). Rather, the Court explained a fact pattern from a different case before the Court:

        . . . I've had this in a different scenario on overtime issues where the people

---

[1] Such questions are, and have been, considered judicial "jawboning." It is a technique used to stimulate discussion, but not a guiding on the merits of the issue.

1
2
3
4

> wanted to be paid. Well, somebody called me at 7:00 o'clock at night and
> somebody called me at 10:00 o'clock at night, and I wanted to be paid for
> four or six hours' worth of work. Well, the trouble is that they were only on
> the phone for just a few minutes during that time frame, and that's what their
> overtime amounted to and not the whole block of time.

5
6
7

(Doc. 98-1 at 26). The Court's stimulation of discussion did not have any bearing on the merits of the overtime issue in this case. Accordingly, Plaintiffs' Motion is denied with prejudice. (Doc. 96).

8

## II.    MOTION TO STRIKE REPLY AND ATTORNEYS FEES

9
10
11

Defendant moved the Court to strike most of Plaintiffs' Response to Defendant's Reply Docket #97 and award Defendant attorney fees associated with its Motion to Strike. (Doc. 100). Plaintiffs did not respond to Defendant's Motion.

12
13
14
15
16
17
18
19
20
21
22
23
24
25

Under LRCiv. 7.2(m)(1), the Court may strike "any part of a filing or submission on the ground that it is prohibited (or not authorized) by a statute, rule, or court order." In the Amended Minute Entry on September 10, 2025 (Doc. 95), the Court ordered Defendant to address any objections to the exhibits that Plaintiffs submitted in their Response to Defendant's Motion for Summary Judgment (Doc. 90) in Defendant's Reply. The Court further ordered that "Plaintiffs may then file a reply to any objections to the **exhibits only** no later than 9/26/2025." (Doc. 95) (emphasis added). However, Plaintiff failed to comply with this Order. (Doc. 99). Instead, Plaintiffs filed 17 pages of substantive argument that largely did not address objections to the exhibits. (Id.) Plaintiffs also filed over 200 pages of text messages that were not previously disclosed to Defendant or submitted to the Court. (Id.) Therefore, the Court will strike the entirety of Plaintiffs' Reply except for the two paragraphs that address objections to exhibits: (1) the second paragraph on page 7, beginning with Page 4, Paragraph 3-4, and (2) the second paragraph on page 8, beginning with Page 6, Paragraph 5. (Id.)

26
27
28

Defendant also moved the Court to grant attorney fees under Fed. R. Civ. P. 37(b)(2). (Doc. 100 at 2-3). Defendant's request for attorney fees associated with its motion to strike will be determined at the conclusion of the case. (Doc. 100 at 2-3).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    MOTION FOR SUMMARY JUDGMENT

#### A.  Background

Plaintiffs Laura Hanson and Richard McNeill worked for Pinnacle Bank at the time it was purchased by Defendant Arizona Financial Credit Union ("AFCU") on December 1, 2019. (Doc. 45 at 1; 5); (Doc. 91 at 1). When starting at Pinnacle Bank, Plaintiffs signed a copy of the position description for roles as outside mortagege loan originators, that described the role's function as a role to "[o]riginate mortgage loans and advise customers during the mortgage lending process through effective marketing and relationship building practices in the community." (Doc. 45 at 2; 3); (Doc. 91 at 2; 3). The description went on to state that this was "a general outline of essential and common functions" but that "[a]ll employees are expected to perform tasks as assigned by management, which, at times, may go beyond those defined by this position description." (Doc. 45 at 4).

After AFCU's purchase of Pinnacle Bank, Plaintiffs became employees of AFCU. (Doc. 45 at 6); (Doc. 91 at 6). AFCU determined that the outside mortgage loan originators should be classified as non-exempt employees, be paid hourly, and record their time. (Doc. 45 at 7); (Doc. 91 at 7). As the former Pinnacle Bank mortgage loan originators, such as Plaintiffs, were not used to recording their time in their previous role at Pinnacle Bank, AFCU took steps to explain how to properly clock in and clock out and emphasized the importance of recording all their hours. (Doc. 45 at 8).

For instance, on November 27, 2019, then Assistant Vice President of Employee Services Jeanette Johnston sent out an email to all the Pinnacle employees who were transitioning to AFCU employment, that stated in part:

> This is just a reminder that all non-exempt (hourly) team members are required to be paid for all hours worked. If you are in a non-exempt position, please ensure you clock in and out in Workforce Software for all time worked. If you miss a punch, or are unable to record your time, please email your leader so they can add the time to your timesheet.

(Doc. 45 at 9).

On December 9, 2019, Senior Vice President of Residential Lending Greg Thorell emailed the mortgage loan originators, stating in part:

1
2
3
4

> As a reminder, please make sure you are recording the time for all hours worked. I know this is the first week for some of us and overall we did a good job of keeping track of our hours worked. In some cases, we need to do better. If you forget to clock in or out, please send me an email and I will add the punch for you.

5    (Doc. 45 at 10).

6    On December 13, 2019, Thorell reminded the mortgage loan originator team that
7    AFCU's policy stated that overtime work had to be preapproved before it was performed.
8    (Doc. 45 at 11). Later that day, Johnston reminded Thorell that even if overtime was not
9    preapproved, AFCU would still pay for the time worked. (Doc. 45 at 12). On December
10   20, 2019, Plaintiff Hanson expressed concerns to Thorell about recording her hours and
11   seeking preapproval for overtime, to which Thorell responded by explaining to Plaintiff
12   Hanson that she should be able to tell whether she needs overtime based on how her week
13   progresses and offered to help if she needed additional assistance to conform to the
14   requirement. (Doc. 45 13-14).

15   In early 2020, Defendant AFCU's employee services team continued to explain the
16   importance of recording all hours worked. (Doc. 45 at 15). Johnston had individual
17   conversations with mortgage loan originators, where it was revealed that that they were not
18   all accurately recording their hours. (Id.) Johnston stated she followed up with the team
19   members who shared they had inaccurate timekeeping practices, including Plaintiff
20   Hanson, to make sure that they were paid for all hours worked. (Doc. 45 at 16). Plaintiff
21   Hanson was paid overtime following these conversations. (Doc. 45 at 17).

22   While Plaintiffs agree that these emails were sent, they believe that the emails
23   discouraged Plaintiffs from reporting overtime and were contradictory in nature. (Doc. 91
24   at 16-19).

25   At a March 5, 2020, mortgage loan originator meeting, Johnston attended to discuss
26   recording hours and overtime practices, after which Plaintiff McNeill reached out to
27   Johnston to make corrections to his timecard. (Doc. 45 at 21). Plaintiffs state that McNeill
28   underreported his overtime in these corrections, to only report time that did not require a
     preapproval. (Doc. 91 at 20).

1    Defendant AFCU's compensation policy states that overtime work must be
2  approved before it is performed. (Doc. 45 at 29). Plaintiff Hanson did not report her
3  overtime due to a fear of being reprimanded, and Plaintiff McNeill did not report as he was
4  under the impression that Defendant AFCU knew the mortgage loan originators were
5  working more than 40 hours per week. (Doc. 45 at 30-31).
6    In 2020 and 2021, Plaintiffs state that the "record low interest rates" caused their
7  team to be very busy. (Doc. 45 at 33-34). As the volume of deals began to decrease in 2022,
8  Defendant requested that employees reduce the amount of overtime hours they worked,
9  and to communicate when they anticipated working overtime. (Doc. 45 at 35). This was
10 stated in a March 3, 2022, email from Amara Wolf, the residential inside sales manager at
11 AFCU. (Doc. 45 at 36). That email stated that the mortgage loan originators could work
12 the rest of the week as necessary, with no need to reach out if they anticipated working
13 overtime, but starting the following week, they were asked to "manage their time
14 effectively. (Doc. 45 at 37). The email went on to state:

> Monitoring your timesheet through the week and adjusting your start/end times, as necessary (e.g. On Monday and Tuesday you worked 9.5 hours each day. On Wednesday and Thursday, perhaps you decide to leave at 4:30 pm) Clocking out for lunch/errands, etc.
> Proactively informing Greg and I if you anticipate needing overtime. Please expect us to ask what you've been working and what you expect to accomplish the remainder of the week.

(Doc. 45 at 37).
20    Plaintiff Hanson testified that she believed the expectations were unreasonable, as
21 she disagreed with the concept of having to anticipate potential overtime work. (Doc. 45 at
22 39). Plaintiff McNeill stated that he was consistently recording 40 hours of work a week,
23 regardless of the actual hours worked. (Doc. 45 at 40).
24    AFCU states that other mortgage loan originators did not have issues with the
25 policies surrounding overtime, submitting declarations from multiple employees stating
26 that they would request permission for overtime, they were never fearful to make a request,
27 and the requests were never denied. (Doc. 45 at 41-42).
28    In 2020, 2021, and 2022, both Plaintiffs executed mortgage loan originator

agreements ("commission agreements") which outline the terms on which mortgage loan originators would receive commissions for their work. (Doc. 45 at 21-22). The agreements stated the following: "To be eligible to receive commissions due hereunder, the Employee must be employed with AFCU on the date that the commissions are due to be paid unless AFCU terminates the employment without cause . . . . If the Employee voluntarily terminates employment with AFCU, any remaining commissions due hereunder will be forfeited." (Doc. 45 at 23-24); (Doc. 91 at 22). The agreement also states that "[c]ommissions for loans closed each month will be paid on the first feasible payroll date following the last day of each month in which the commissions were earned. Payment of commissions on other payroll dates will be made at the sole discretion of [Defendant]." (Doc. 45 at 23-24); (Doc. 91 at 22).

Plaintiffs state that they were powerless to negotiate these provisions because they needed to sign the agreements to continue their employment. (Doc. 91 at 21). Plaintiffs believe the forfeiture clause was illegal and required Plaintiffs to provide free labor. (Doc. 91 at 21).

Plaintiff Hanson resigned from AFCU on August 15, 2022. (Doc. 45 at 24). Hanson sent an email on August 15, 2025, asserting that she was owed commissions on completed loans. (Doc. 45 at 25-26). The email specifically stated:

> The commissions I am due on my completed loans are as follows:
> Smith $6,000 closed last month and scheduled to be paid out 08/19/2022.
> Nelson $960 closed 08/02/2022
> Geiman $2,900 closed 08/16/2022
> Ruehs $6,000 closing next week and has signed their closing disclosure.
> That's $15,840 of commissions.

(Doc. 45 at 26). Johnston responded to Hanson, stating that AFCU did not owe her the commissions due to her resignation. (Doc. 45 at 27).

Plaintiffs brought suit in Arizona state court, and the action was removed to this Court. (Doc. 1). Plaintiffs' Second Amended Complaint asserted three causes of action: (1) Violation of the Fair Labor standards Act by refusing to pay Plaintiffs for overtime hours in excess of 10 hours per week; (2) Violation of the Arizona Fair Wage Act for failing to

pay Plaintiff Hanson commissions on all completed loans she originated; (3) Breach of the Duty of Good Faith and Fair Dealing. (Doc. 15 at 6-8). Defendant AFCU moves for summary judgment on all of Plaintiffs' claims. (Doc. 44).

### B. Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence. . .of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996).

### C. Discussion

Defendant seeks summary judgement on all of Plaintiffs' claims: (1) violation of the Fair Labor Standards Act ("FLSA") for refusing to pay Plaintiffs for overtime hours in excess of 10 hours per week; (2) violation of the Arizona Wage Act ("AWA") for failing to pay Plaintiff Hanson commissions on all completed loans she originated; and (3) breach of the duty of good faith and fair dealing. For the reasons set forth below, the Court grants in-part and denies in-part Defendant's Motion for Summary Judgment.

#### 1. Count I: Fair Labor Standards Act—Overtime

The FLSA provides that a covered employer shall not employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employer that violates § 207 "shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

To establish a minimum-wage or overtime violation of the FLSA, Plaintiffs must establish three elements: (1) they were an employee of Defendant; (2) they are covered under the FLSA, and (3) Defendant failed to pay them minimum wage or overtime wages. 29 U.S.C. §§ 206(a), 207(a)). However, as defined in 29 U.S.C. § 203(g), "employ" means "suffer or permit to work." "[T]he words 'suffer' and 'permit' as used in the statute means 'with the knowledge of the employer.'" Fox v. Summit King Mines, 143 F.2d 926 (9th Cir. 1944). An employer who "knows or should have known that an employee is or was working overtime must comply with the provisions of § 207." Forrester v. Roth's I. G. A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981). Further, "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." Id. However, if an "employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." Id.

Here, it is undisputed that Plaintiffs were employees of Defendant AFCU, and that Plaintiffs are covered non-exempt employees.[2] Rather, the disputed issue is whether Defendant had knowledge that Plaintiffs were working overtime and refused to pay them in violation of § 207 of the FLSA. Plaintiffs allege that Defendant violated the FLSA by (1) refusing to pay them for overtime hours in excess of 10 hours of preapproved overtime

---

[2] Defendant waived any defense that Plaintiffs were exempt employees.

1    per week in 2020 and 2021 and (2) punishing them for reporting overtime hours in excess

2    of the preapproved overtime. (Doc. 15).

3           However, a court can only consider admissible evidence in ruling on a motion for

4    summary judgment. Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)

5    (citing Fed. R. Civ. P. 56(e)). Plaintiffs cite a large amount of unauthenticated, and

6    therefore, inadmissible evidence, including hundreds of text messages, in their response to

7    Defendant's Motion for Summary Judgment to demonstrate that Defendant had knowledge

8    that Plaintiffs were working overtime. (Doc. 90). Because authentication is a precondition

9    to admissibility, evidence must therefore be properly authenticated for use in a motion for

10   summary judgment. Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542,

11   1550–51 (9th Cir. 1990). This authentication requirement is "satisfied by evidence

12   sufficient to support a finding that the matter in question is what its proponent claims."

13   Fed. R. Evid. 901(a); U.S. v. Tank, 200 F.3d 627, 630 (9th Cir. 2000). The Ninth Circuit

14   has found documents to be authenticated when they were in the opposing party's

15   possession. U.S. v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

16          Defendant objects to Plaintiffs' reliance on "any text messages, phone records,

17   witness statements, or witness lists which were not disclosed during discovery to oppose

18   summary judgment." (Doc. 97 at 4-5). Defendant claims that the documents in Plaintiffs'

19   Exhibits 3, 4, 5, and 6 were not disclosed during discovery and are therefore inadmissible

20   evidence. [3] (Id. at 5). The Court agrees with Defendant that most of Plaintiffs' cited

21   exhibits were never previously disclosed and therefore cannot be considered by the Court

22   in ruling on this Motion. [4] Therefore, the only admissible evidence from Plaintiffs' exhibits

23   _____

[3] Exhibit 3 is a graph of mortgage originations in the United States showing that business
24   more than doubled in 2020 and 2021 from "www.statista.com". Exhibit 4 contains a list of
potential witnesses and statements from certain witnesses that were not disclosed during
25   discovery. Exhibit 5 claims to include over 400 text messages ranging from 5:29 a.m. to
11:15 p.m., but the texts were not filed as exhibits to Plaintiffs' Response. Exhibit 6
26   includes text messages between Plaintiffs and Greg Thorell, which were previously
disclosed, but also includes phone records and texts with other individuals, which were not
27   disclosed until July 2025.
[4] Exhibit 3 is inadmissible because it is not authenticated. See Fed. R. Evid. 901(b)(8).
28   Exhibit 4 is inadmissible hearsay. See Fed. R. Evid. 801(c)(2), 802). Exhibit 6 except for
the phone records and text messages with Greg Thorell are inadmissible hearsay and not
authenticated. See Fed. R. Evid. 801(c)(2), 802, 901.

to support their FLSA claim include Plaintiff Hanson's text messages with her manager Greg Thorell (Doc. 91 at 58-120) and Plaintiff Hanson's emails sent to Jeanette Johnson, Vice President of Employee Services, after Plaintiff Hanson resigned (Doc. 91 at 125-38).

Also, the Court agrees with Defendant that Plaintiff Hanson's post-employment estimates of her overtime hours in the spreadsheets in Exhibit 8 (Doc. 91 at 129, 133) are speculative and do not demonstrate that Defendant willfully violated the FLSA. (Doc. 97 at 7-9). The Court also agrees with Defendant that it is "undisputed that Mortgage Loan Originators routinely worked outside of the office and did not have set schedules." (Doc. 45 at 9 ¶¶ 58-61). Plaintiff Hanson's text messages with Thorell in Exhibit 6 (Doc. 91 at 58-120) do not provide sufficient evidence that Defendant had knowledge that Plaintiffs worked more than 10 hours of overtime per week. Additionally, Plaintiffs do not present any evidence to show that they were punished for reporting more than 10 hours of overtime per week.

Accordingly, the Court finds that Plaintiffs have failed to make a sufficient showing that Defendant had knowledge that Plaintiffs were working more than 10 hours of overtime per week and that Plaintiffs were punished for reporting more than 10 hours of overtime per week. Plaintiffs have not presented enough admissible evidence on an essential element of their case with respect to which they have the burden of proof. See Celotex, 477 U.S. at 323 ("The burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"). As such, the Court finds that there is no genuine issue of material fact over whether Defendant was aware that Plaintiffs were working more than 10 hours of overtime per week during 2020 and 2021 and whether Defendant punished Plaintiffs for reporting more than 10 hours of overtime per week. See Fed. R. Civ. P. 56(c). The Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' FLSA claim and dismisses Count I of Plaintiffs' Second Amended Complaint. (Docs. 15, 44).

## 2. Count II: Violation of Arizona's Wage Statute, A.R.S. § 23-355

Plaintiff Hanson claims that Defendant's failure to pay her commissions on the

1    completed loans that she originated, even though she resigned before the commissions were

2    due to be paid, violates A.R.S. § 23-355. (Doc. 90 at 7). Defendant argues that Plaintiff

3    Hanson did not have a reasonable expectation to receive the commissions because her

4    contract required her to remain employed when her commissions were due to be paid. (Doc.

5    44 at 11-12).

6        Under the AWA, "if an employer. . .fails to pay wages due to an employee, the

7    employee may recover in a civil action against an employer ... an amount that is treble the

8    amount of unpaid wages." § 23-355(A). Wages are "nondiscretionary compensation due

9    an employee in return for labor or services ... for which the employee has a **reasonable**

10   **expectation** to be paid. . . ." § 23–350(7)(emphasis added). Sales commissions are wages

11   under this definition. <u>Sanborn v. Brooker & Wake Property Mgmt., Inc.</u>, 178 Ariz. 425,

12   427 (App. 1994); <u>Heimer v. Price, Kong & Co.</u>, No. 1 CA-CV 07-0643, 2008 WL 5413368,

13   at *4 (Ariz. Ct. App. Dec. 30, 2008); <u>Schade v. Diethrich</u>, 760 P.2d 1050, 1061–62 (Ariz.

14   1988) ("While the amount was subject to computation, the obligation to pay was absolute,

15   not discretionary.")

16       In this case, the disputed issue is whether Plaintiff Hanson had a "reasonable

17   expectation" to receive her commissions when she resigned. (Docs. 44, 90).  Plaintiff

18   Hanson alleges that Defendant violated the AWA when it failed to pay her commissions

19   "on all completed loans that she originated", even though the commissions were scheduled

20   to be paid after her resignation pursuant to her commission agreement. (Doc. 90 at 3-5).

21   Defendant argues that Plaintiff Hanson's expectation to receive the commissions is

22   unreasonable because it is inconsistent with the terms of her contract. (Doc. 44 at 12-13).

23   Plaintiffs' commission agreement states the following:

24       To be eligible to receive commissions due hereunder, the Employee **must be
         employed with AFCU on the date that the commissions are due** to be paid unless
25       AFCU terminates the employment without cause (as defined in AFCU's policies
         and codes of conduct).  If the Employee voluntarily terminates employment with
26       AFCU, any remaining commissions due hereunder will be forfeited.

27   (Doc. 45 at 23-24); (Doc. 91 at 22)(emphasis added).

28       Plaintiff Hanson claims she was not unaware of the provision in her Mortgage Loan

- 11 -

Originator Agreements that stated commissions would be forfeited if she was not employed on the date they were due to be paid. (Doc. 45 at 11 ¶ 79). Additionally, Plaintiff Hanson asserts she was unaware her unpaid commissions would be forfeited upon resignation because "every other bank" she worked for in her 33-year career "has paid commissions on loans up to 30 days beyond the date you resign." (Id. at 11 ¶ 80).

Also, Plaintiff Hanson alleges that Defendant compelled her to resign on the August 15, 2022, Teams call, so she should be deemed terminated without cause for purposes of her commission agreement. (Doc. 90 at 8). Plaintiffs submitted an excerpt an unofficial transcript from an incomplete recording of a portion of the August 15, 2022 Teams call. (Doc. 91 at 142-43). However, Plaintiffs' exhibit does not establish that Defendant compelled Hanson to resign, and it was untimely disclosed so the Court will not consider it in deciding this Motion. (See Id.)

It is undisputed that Plaintiff Hanson resigned, meaning she was not employed, before the date payment of those commissions would have occurred. (Doc. 91 at 19). The Court finds that based on the explicit, undisputed terms of the commission agreement Plaintiff Hanson could not have had a reasonable expectation that she would receive the disputed commissions because the terms of the compensation plan required that she remain employed on the commission payment date. Wedel v. Olympian Worldwide Moving & Storage, Inc., No. 1 CA-CV 23-0482, 2024 WL 1406140, at *3 (Ariz. Ct. App. Apr. 2, 2024) (concluding employee had no reasonable expectation of payment when he was not employed when commissions became payable); see also Maturani v. Exhibit Fair Int'l, Inc., No. CV 08-1258-PHX-SRB, 2009 WL 10673084, at *5 (D. Ariz. June 17, 2009) (holding that plaintiff could not have reasonably expected payment of commissions because the transactions had not closed by the terms of the agreement when plaintiff resigned).

The Court acknowledges that Defendant did have discretion to pay Plaintiff Hanson her commissions when she resigned.[5] (Doc. 44-2 at 3). Other courts have found that an

---

[5] "Commissions for loans closed each month will be paid on the first feasible payroll date following the last day of each month in which the commissions were earned. Payment of commissions on other payroll dates will be made at the sole discretion of AFCU." (Doc.

employer operating under a commission plan that grants it the unilateral power to cancel cannot use that discretion in an "arbitrary, unreasonable or oppressive" manner. Marciniak v. Veritas Techs. LLC, No. CV-20-01979-PHX-SMB, 2021 WL 1627250, at *4 (D. Ariz. Apr. 27, 2021); see also Staren v. Clarivate Analytics (US), LLC, No. CV-23-02091-PHX-DWL, 2025 WL 40767, at *7 (D. Ariz. Jan. 7, 2025) ("[E]ven textually unbounded grants of discretion [must] be exercised in a good-faith, non-arbitrary, and non-oppressive manner."); see also Mishkin v. Pharm. Rsch. Assocs. Inc., No. CV-24-01423-PHX-KML, 2025 WL 345366 (D. Ariz. Jan. 30, 2025). However, Plaintiff Hanson has not produced any evidence to demonstrate that Defendant acted in bad faith in failing to pay her commissions. In fact, Defendant acted within the bounds of reasonable discretion based on the terms of the commission agreement. See e.g., Schwarzkopf v. Int'l Bus. Machines, Inc., No. C 08-2715 JF HRL, 2010 WL 1929625, at *13 (N.D. Cal. May 12, 2010).

Accordingly, the Court finds that it was unreasonable for Plaintiff Hanson to assume that she would receive commissions on the loans that were scheduled to be paid after she resigned. The Court grants Defendant's Motion for Summary Judgment on the AWA claim and dismisses Count II of Plaintiffs' Second Amended Complaint. (Docs. 15, 44).

### 3. Count III: Good Faith and Fair Dealing

Under Arizona law, the implied covenant of good faith and fair dealing "prohibits a party from doing anything to prevent other parties to [a] contract from receiving the benefits. . .of the agreement." Wells Fargo Bank v. Arizona Laborers, Local No. 395 Pension Trust Fund, 201 Ariz. 474, 490, ¶ 59, 38 P.3d 12, 28 (2002). A party may breach the implied covenant even in the absence of a breach of an express provision of the contract by denying the other party the reasonably expected benefits of the agreement. Id. at 491–92, ¶¶ 64, 66, 38 P.3d at 29–30.

Here, Plaintiffs allege Defendant breached the duty of good faith and fair dealing implied in the employment agreements by (1) compelling Plaintiffs to underreport their

_____

44-2 at 3).

overtime hours worked, (2) coercing Plaintiffs into stating they did not work overtime hours over the amount reported, (3) refusing to approve advance requests for overtime in excess of the maximum allowed, (4) requiring Plaintiffs to perform tasks that were not in their job description or standard for the industry for loan officers, and (5) forcing Plaintiffs to sign the Agreements with allegedly unconscionable terms with respect to commission payments as a condition of employment. (Doc. 45 at 11-12 ¶ 83.)

### a) Overtime

Plaintiffs allege that Defendant compelled them to underreport their overtime hours, coerced them into stating they did not work overtime over the amount reported and refused to approve advance requests for overtime over 10 hours. (Id. at 14). Defendant argues that Plaintiffs cannot tie any of their allegations to the bargain itself because the agreements do not reference how Defendant will address overtime. (Id.). The Court agrees with Defendant that to establish a claim for violation of the covenant of good faith and fair dealing there must be a breach of an express provision of an agreement that denied plaintiffs the reasonably expected benefits of the agreement. Wells Fargo Bank, 201 Ariz. at 491–92, ¶¶ 64, 66, 38 P.3d at 29–30. In this case, there is no agreement between the parties that addresses overtime. Also, Plaintiffs have not presented any admissible evidence that Defendant compelled them to underreport their overtime hours, coerced them into stating they did not work overtime over the amount reported and refused to approve advance requests for overtime over 10 hours. Accordingly, the Court finds that there is no dispute of material fact and grants Defendant's Motion for Summary Judgment on Count III as it relates to overtime and dismisses Count III of Plaintiffs' Second Amended Complaint as it relates to overtime. (Docs. 15, 44).

### b) Job Duties

With respect to Plaintiffs' allegation that Defendant required Plaintiffs to perform duties that were not in their job description or standard for the industry for loan officers, the Court finds Plaintiffs' arguments unavailing. Plaintiffs do not provide admissible

evidence to support their allegations nor demonstrate how Defendant violated the terms of their agreement. The agreement states that "[a]ll employees are expected to perform tasks as assigned by management, which, at times, may go beyond those defined by this position description." (Doc. 45 at 2 ¶ 4). Plaintiffs do not demonstrate how their job duties fell outside of this description. Further, an employee's job duties often fall outside the job description. See e.g., Garcetti v. Ceballos, 547 U.S. 410, 424–25, 126 S. Ct. 1951, 1962, 164 L. Ed. 2d 689 (2006)("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties. . .").

Accordingly, the Court finds that there is no dispute of material fact and grants Defendant's Motion for Summary Judgment on Count III as it relates to Plaintiffs' performance of duties allegedly not in the job description and outside the industry standard for loan officers and dismisses Count III of Plaintiffs' Amended Complaint as it relates to job duties. (Docs. 15, 44).

### c) Forfeiture Clause

Plaintiffs allege that Defendant breached the duty of good faith and fair dealing by forcing Plaintiffs to sign commission agreements with unconscionable terms as a condition of employment. (Doc. 44 at 14). Defendant argues that the forfeiture clause of the commission agreement is not procedurally unconscionable because nothing in Arizona law requires a drafter to explain the provisions of standardized contracts. (Doc. 97 at 11). However, Defendant does not address Plaintiffs' substantive unconscionability claim in its briefing. (See Docs. 44, 97).

Under Arizona law, "[t]he determination of whether a contract is unconscionable is to be made by the trial court as a matter of law." Maxwell v. Fid. Fin. Servs., Inc., 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995). But a court "cannot make its determination without first making factual findings." Id.; see also Nickerson v. Green Valley Recreation, Inc., 228 Ariz. 309, 265 P.3d 1108 (Ct. App. 2011). The Arizona Supreme Court has explained

"that 'reasonable expectations' and unconscionability are two distinct grounds for invalidating or limiting the enforcement of a contract." Harrington v. Pulte Home Corp., 211 Ariz. 241, 252, 119 P.3d 1044, 1055 (Ct. App. 2005) (quoting Maxwell, 184 Ariz. at 88, 907 P.2d at 57). "Even when contract provisions are 'consistent with the reasonable expectations of the party' they are unenforceable if they are oppressive or unconscionable." Harrington, 211 Ariz. at 252, 119 P.3d at 1055 (quoting Broemmer v. Abortion Servs. of Phoenix, Ltd., 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992).

Arizona recognizes two types of unconscionability: procedural and substantive. See Maxwell, 184 Ariz. at 84, 89–90, 907 P.2d at 53, 58–59 (unconscionability examined at time of contract formation); see also Nelson v. Rice, 198 Ariz. 563, ¶ 13, 12 P.3d 238, 242–43 (Ct. App. 2000)("'Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se.'"), quoting Phx. Baptist Hosp. & Med. Ctr., Inc. v. Aiken, 179 Ariz. 289, 293, 877 P.2d 1345, 1349 (App. 1994).

Procedural or process unconscionability is concerned with whether the manner the contract was negotiated was unfair. See Maxwell, 184 Ariz. at 88–89, 907 P.2d at 57–58. Here, Plaintiffs assert that the forfeiture clause in the commission agreements "was never pointed out" to them. (Doc. 90 at 3). However, Plaintiffs' failure to review their contracts does not render the contents unlawful. See Rizzio v. Surpass Senior Living LLC, 248 Ariz. 266, 271, 459 P.3d 1201, 1206 (Ct. App. 2020), aff'd in part, vacated in part on other grounds, 251 Ariz. 413, 492 P.3d 1031 (2021) ("Nothing in applicable Arizona law requires a drafter to explain the provisions of standardized contracts, nor does the post-hoc regret of a party to such a contract suffice to demonstrate unconscionability."). Plaintiffs also assert that they were "powerless to negotiate" because they had an existing employment relationship with Pinnacle Bank before AFCU and that they "had a pipeline full of loans that would be lost if the agreement was not signed when it was put before them." (Doc. 90 at 3). However, Plaintiffs' commission agreement with Pinnacle Bank had an identical forfeiture provision as Defendant AFCU's commission agreement. (Doc. 44 at 3); (Doc.

45 at 11). Therefore, Defendant's commission agreement is not procedurally unconscionable.

Additionally, Plaintiffs argue that the language of the forfeiture clause itself is unconscionable. (Doc. 90 at 3-6). "A bargain is unconscionable if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." Phx. Baptist Hosp. & Med. Ctr., Inc., 179 Ariz. at 293(quotation omitted); accord Restatement (Second) Contracts § 208, cmt. b. "Substantive unconscionability occurs where a contract has 'terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.'" Rizzio, 248 Ariz. at 271-72, ¶ 21(quoting Maxwell, 184 Ariz. at 89, and citing Clark v. Renaissance W., LLC, 232 Ariz. 510, 512, ¶ 8 (App. 2013)). Whether a contract is substantively unconscionable depends on "the actual terms of the contract," Maxwell, 184 Ariz. at 89, and terms may be unconscionable if they are "monstrously harsh" or "shocking to the conscience." Aerial Funding LLC v. Van Sickle, No. 1 CA-CV 19-0543, 2020 WL 6140700, at *3 (Ariz. Ct. App. Oct. 20, 2020) (quoting Ariz. Coffee Shops, Inc. v. Phx. Downtown Parking Ass'n, 95 Ariz. 98, 101 (1963)). Also, under Arizona Law, "contracts will be interpreted to avoid a forfeiture if fairly possible". Equitable Life & Cas. Ins. Co. v. Rutledge, 9 Ariz. App. 551, 554, 454 P.2d 869, 872 (1969). See also Harford v. Nat'l Life & Cas. Ins. Co., 81 Ariz. 43, 299 P.2d 635 (1956).[6]

In evaluating substantive unconscionability, the Court evaluates the impact of the actual terms of the contract, not the surrounding circumstances or reasonable expectations of the parties. Maxwell, 184 Ariz. at 89. Here, Plaintiffs executed commission agreements that outline the terms on which mortgage loan originators receive commissions for their

---

[6] While not explicitly applied to mortgage loan originators, under Arizona law a real estate broker is entitled to commissions when they were the "efficient, proximate and procuring cause of sale." Clark v. Ellsworth, 66 Ariz. 119, 122, 184 P.2d 821, 822 (1947); see also Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159; see also Garver v. Thoman, 15 Ariz. 38, 135 P. 724.

work. (Doc. 45 at 21-22). The commission agreements state the following:

> To be eligible to receive commissions due hereunder, the Employee must be employed with AFCU on the date that the commissions are due to be paid unless AFCU terminates the employment without cause . . . . If the Employee voluntarily terminates employment with AFCU, **any remaining commissions due hereunder will be forfeited**.

(Doc. 45 at 23-24) (emphasis added); (Doc. 91 at 22).

Plaintiffs believe the forfeiture clause is illegal and requires them to provide free labor. (Doc. 91 at 21). Plaintiffs also allege that the forfeiture clause is unlawful as a matter of public policy because the "Federal Trade Commission has banned and outlawed non-compete or forfeiture for competition clauses[.]" (Doc. 90 at 5); see 16 C.F.R. § 910.1. However, as Defendant points out, Plaintiff Hanson's agreements do not contain a non-compete nor a forfeiture for competition clause and the Federal Trade Commission's rule limiting the enforcement of non-compete agreements has been set aside. (Doc. 97 at 11); see Ryan, LLC v. Fed. Trade Comm'n, 746 F. Supp. 3d 369, 374-75 (N.D. Tex. 2024).

Next, Defendant argues that the forfeiture provision is lawful. (Doc. 97 at 11). Defendant argues that the Arizona Supreme Court's decision in Harford does not impact this case. (Id.) Specifically, Defendant argues that "(1) here, there is an applicable provision authorizing the forfeiture of any commissions not due to be paid by the date of Hanson's resignation, and (2) the provision in Hanson's contracts authorizing forfeiture is not ambiguous and cannot be interpreted in multiple ways." (Id.); (Doc. 45 at 4 ¶ 23).

However, as the Court acknowledged above, Defendant did retain discretion to pay Plaintiff Hanson her commissions. (Doc. 44-2 at 3). Specifically, the applicable clause in the commission agreement states

> Commissions for loans closed each month will be paid on the first feasible payroll date following the last day of each month in which the commissions were earned. Payment of commissions on other payroll dates will be made at the **sole discretion of [Defendant]**.

(Id.)(emphasis added). Here, Defendant could have still paid Plaintiff Hanson her commissions based on the agreement's language despite the forfeiture clause. Further, as Defendant states in its Response, to the extent the contract could be interpreted multiple ways, it should be interpreted against the contract drafter, the company." (Doc. 97 at 10);

Harford, 81 Ariz. at 45, 299 P.2d at 637 (citing Hamberlin v. Townsend, 76 Ariz. 191, 195, 261 P.2d 1003, 1005 (1953)). Accordingly, the Court must interpret the contract against Defendant since it is the contract drafter.

In this case, Plaintiff Hanson performed all the tasks necessary to earn the commissions, and the only task left to do was for Defendant to pay the commissions. (Doc. 45 at 26). Plaintiff Hanson had three loans that were already closed when she resigned. (Id.) On the closed loans, Plaintiff Hanson was supposed to receive commissions of $6,000 on the Smith loan, $960 on the Nelson loan, and $2,900 on the Geiman loan. (Id.) However, due to her resignation, Defendant refused to pay her the commissions. (Id. at 27).

Plaintiffs argue that the forfeiture clause is unconscionable because it required them to provide free labor to Defendant. (Doc. 91 at 21). Defendant does not specifically address Plaintiffs' claim that the forfeiture clause is substantively unconscionable in its briefing. (See Docs. 44, 97). Failure to respond to an argument "may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv 7.2(i). Therefore, the Court will consider Plaintiffs' argument that the forfeiture clause is substantively unconscionable to be consented to by Defendant.

The Court agrees with Plaintiff that the forfeiture clause, as applied to the facts of this case, is unconscionable. The terms of the forfeiture clause are "so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." Maxwell, 184 Ariz. at 89 (citing Clark, 232 Ariz. at 512, ¶ 8). In this case, the forfeiture clause unjustly takes money away from Plaintiff Hanson that she rightfully earned. She completed all the tasks necessary to earn the commissions and the loans were already closed upon her resignation. Also, there is a significant imbalance in the parties' obligations. Defendant received the benefit of Plaintiff Hanson's work when she closed the loans; however, Plaintiff Hanson did not receive compensation.

Accordingly, the Court finds that as a matter of law it is unconscionable for an employer to deny commissions, even when an employee resigned, if an employee has performed all the tasks necessary to earn the commissions and the only task left to do is for

1    an employer to pay the commissions. Therefore, the Court denies Defendant's Motion for
2    Summary Judgment as to Plaintiffs' good faith and fair dealing claim as it relates to the
3    substantive unconscionability of the forfeiture clause. (Doc. 44).

4        Additionally, even when there is no cross-motion for summary judgment, "where
5    the party moving for summary judgment has had a full and fair opportunity to prove its
6    case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte*
7    for the nonmoving party." Albino v. Baca, 747 F.3d 1162, 1176 (9th Cir. 2014); see, e.g.,
8    Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982); see also Gospel Missions of
9    Am. v. City of Los Angeles, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been
10   no cross-motion for summary judgment, a district court may enter summary judgment sua
11   sponte against a moving party if the losing party has had a 'full and fair opportunity to
12   ventilate the issues involved in the matter.' ") (quoting Cool Fuel, Inc., 685 F.2d at 312);
13   see also Celotex Corp., 477 U.S. at 326 ("district courts are widely acknowledged to
14   possess the power to enter summary judgments *sua sponte*, so long as the losing party was
15   on notice that she had to come forward with all of her evidence."); see also Fed. R. Civ. P.
16   56(f)(1)("After giving notice and a reasonable opportunity to respond, the court may. . .
17   grant summary judgment for a non-movant. . .").

18       In this case, only Defendant moved for summary judgment. (Doc. 44). However,
19   the Court finds that Defendant had a fair opportunity to argue why the forfeiture clause is
20   not substantively unconscionable and knew that it had to come forward with all its evidence
21   since it moved for summary judgment on all of Plaintiffs' counts. (Id.) For the reasons
22   previously set forth, the forfeiture clause, as applied to the facts of this case, is
23   unconscionable as a matter of law, and there are no disputes of material fact remaining in
24   this case. Accordingly, pursuant to Rule 56(f)(1), the Court grants summary judgment in
25   favor of Plaintiffs on Count III as it relates to the unconscionability of the forfeiture clause
26   and awards Plaintiff Hanson $9,860.00 for her unpaid commissions on the loans that closed
27   before she resigned.
28

1

**IV.    CONCLUSION**

Upon consideration of the parties' briefing on Defendant's Motion for Summary Judgment, (Doc. 44), the Court finds that Defendant is entitled to summary judgment on Plaintiffs' FLSA claim (Count I), AWA claim (Count II), and good faith and fair dealing claim (Count III) as it relates to overtime and performance of job duties allegedly not in the job description and outside the industry standard for loan officers. However, the Court denies Defendant's motion for summary judgment on Plaintiffs' good faith and fair dealing claim as it relates to unconscionability of the commission agreement's forfeiture clause and grants summary judgment under Rule 56(f)(1) in favor of Plaintiffs on this claim because the Court finds that as a matter of law the forfeiture clause is unconscionable as applied to the loans that closed before Plaintiff Hanson resigned.

For the reasons set forth,

**IT IS ORDERED denying** Plaintiffs' Motion to Strike Leading Question **with prejudice**. (Doc. 96).

**IT IS FURTHER ORDERED granting** Defendant's Motion to Strike Reply. (Doc. 100).

**IT IS FURTHER ORDERED denying** Defendant's Motion for Attorney Fees **without prejudice**. (Doc. 100).

**IT IS FURTHER ORDERED granting in-part, and denying in-part**, Defendant's Motion for Summary Judgment. (Doc. 44).

**IT IS FURTHER ORDERED granting** Defendant's Motion on Count I, Count II, and Count III as it relates to overtime and performance of job duties allegedly not in the job description and outside the industry standard for loan officers. (Doc. 44).

**IT IS FURTHER ORDERED denying** Defendant's Motion for Summary Judgment on Count III as it relates to the unconscionability of the forfeiture clause. (Doc. 44).

**IT IS FURTHER ORDERED dismissing** all of Count I, all of Count II, and Count III as it relates to overtime and job duties in Plaintiffs' Second Amended Complaint.

- 21 -

(Doc. 15).

**IT IS FURTHER ORDERED denying** the following motions as moot. (Docs. 62, 73, 78, 80, 81, 82, 83, 84, 85, 86).

**IT IS FURTHER ORDERED granting** judgment for Plaintiffs on Count III as it relates to the unconscionability of the forfeiture clause. Fed. R. Civ. P. 56(f)(1).

**IT IS FURTHER ORDERED awarding** Plaintiff Laura Hanson $9,860.00, plus post-judgment interest, for her unpaid commissions on loans that closed before she resigned.

**IT IS FURTHER ORDERED** that the parties may file any motions for attorney's fees or costs <u>on or before January 15, 2026</u>.

Dated this 2nd day of December, 2025.

Stephen M. McNamee
Senior United States District Judge

- 22 -