**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura R Hanson, et al., | No. CV-23-01849-PHX-SMM |
| Plaintiffs, | **ORDER** |
| v. | |
| Arizona Financial Credit Union, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion for Reconsideration of the Summary Judgment Order (Doc. 105), Motion to Modify Sanctions Order (Doc. 106), and Motion for Treble Damages (Doc. 107). The Motions are fully briefed. (Docs. 105, 106, 107, 111, 115, 116, 117, 118, 119, 120). For the following reasons the Court denies Plaintiffs' Motion for Reconsideration of the Summary Judgment Order (Doc. 105), grants Plaintiffs' Motion to Modify Sanctions Order (Doc. 106), and denies Plaintiffs' Motion for Treble Damages (Doc. 107).

**I.    BACKGROUND**

Plaintiffs Laura Hanson and Richard McNeill worked for Pinnacle Bank at the time it was purchased by Defendant Arizona Financial Credit Union ("AFCU") on December 1, 2019. (Doc. 45 at 1; 5); (Doc. 91 at 1). When starting at Pinnacle Bank, Plaintiffs signed a copy of the position description for roles as outside mortgage loan originators, that described the role's function as a role to "[o]riginate mortgage loans and advise customers during the mortgage lending process through effective marketing and

relationship building practices in the community." (Doc. 45 at 2; 3); (Doc. 91 at 2; 3). The description went on to state that this was "a general outline of essential and common functions" but that "[a]ll employees are expected to perform tasks as assigned by management, which, at times, may go beyond those defined by this position description." (Doc. 45 at 4).

After AFCU's purchase of Pinnacle Bank, Plaintiffs became employees of AFCU. (Doc. 45 at 6); (Doc. 91 at 6). AFCU determined that the outside mortgage loan originators should be classified as non-exempt employees, be paid hourly, and record their time. (Doc. 45 at 7); (Doc. 91 at 7). As the former Pinnacle Bank mortgage loan originators, such as Plaintiffs, were not used to recording their time in their previous role at Pinnacle Bank, AFCU took steps to explain how to properly clock in and clock out and emphasized the importance of recording all their hours. (Doc. 45 at 8).

For instance, on November 27, 2019, then Assistant Vice President of Employee Services Jeanette Johnston sent out an email to all the Pinnacle employees who were transitioning to AFCU employment, that stated in part:
> This is just a reminder that all non-exempt (hourly) team members are required to be paid for all hours worked. If you are in a non-exempt position, please ensure you clock in and out in Workforce Software for all time worked. If you miss a punch, or are unable to record your time, please email your leader so they can add the time to your timesheet.

(Doc. 45 at 9).

On December 9, 2019, Senior Vice President of Residential Lending Greg Thorell emailed the mortgage loan originators, stating in part:
> As a reminder, please make sure you are recording the time for all hours worked. I know this is the first week for some of us and overall we did a good job of keeping track of our hours worked. In some cases, we need to do better. If you forget to clock in or out, please send me an email and I will add the punch for you.

(Doc. 45 at 10).

On December 13, 2019, Thorell reminded the mortgage loan originator team that AFCU's policy stated that overtime work had to be preapproved before it was performed. (Doc. 45 at 11). Later that day, Johnston reminded Thorell that even if overtime was not

preapproved, AFCU would still pay for the time worked. (Doc. 45 at 12). On December 20, 2019, Plaintiff Hanson expressed concerns to Thorell about recording her hours and seeking preapproval for overtime, to which Thorell responded by explaining to Plaintiff Hanson that she should be able to tell whether she needs overtime based on how her week progresses and offered to help if she needed additional assistance to conform to the requirement. (Doc. 45 13-14).

In early 2020, Defendant AFCU's employee services team continued to explain the importance of recording all hours worked. (Doc. 45 at 15). Johnston had individual conversations with mortgage loan originators, where it was revealed that that they were not all accurately recording their hours. (Id.) Johnston stated she followed up with the team members who shared they had inaccurate timekeeping practices, including Plaintiff Hanson, to make sure that they were paid for all hours worked. (Doc. 45 at 16). Plaintiff Hanson was paid overtime following these conversations. (Doc. 45 at 17).

While Plaintiffs agree that these emails were sent, they believe that the emails discouraged Plaintiffs from reporting overtime and were contradictory in nature. (Doc. 91 at 16-19).

At a March 5, 2020, mortgage loan originator meeting, Johnston attended to discuss recording hours and overtime practices, after which Plaintiff McNeill reached out to Johnston to make corrections to his timecard. (Doc. 45 at 21). Plaintiffs state that McNeill underreported his overtime in these corrections, to only report time that did not require a preapproval. (Doc. 91 at 20).

Defendant AFCU's compensation policy states that overtime work must be approved before it is performed. (Doc. 45 at 29). Plaintiff Hanson did not report her overtime due to a fear of being reprimanded, and Plaintiff McNeill did not report as he was under the impression that Defendant AFCU knew the mortgage loan originators were working more than 40 hours per week. (Doc. 45 at 30-31).

In 2020 and 2021, Plaintiffs state that the "record low interest rates" caused their team to be very busy. (Doc. 45 at 33-34). As the volume of deals began to decrease in

2022, Defendant requested that employees reduce the amount of overtime hours they worked, and communicate when they anticipated working overtime. (Doc. 45 at 35). This was stated in a March 3, 2022, email from Amara Wolf, the residential inside sales manager at AFCU. (Doc. 45 at 36). That email stated that the mortgage loan originators could work the rest of the week as necessary, with no need to reach out if they anticipated working overtime, but starting the following week, they were asked to "manage their time effectively. (Doc. 45 at 37). The email went on to state:

> Monitoring your timesheet through the week and adjusting your start/end times, as necessary (e.g. On Monday and Tuesday you worked 9.5 hours each day. On Wednesday and Thursday, perhaps you decide to leave at 4:30 pm)
> Clocking out for lunch/errands, etc.
> Proactively informing Greg and I if you anticipate needing overtime. Please expect us to ask what you've been working and what you expect to accomplish the remainder of the week.

(Doc. 45 at 37).

Plaintiff Hanson testified that she believed the expectations were unreasonable, as she disagreed with the concept of having to anticipate potential overtime work. (Doc. 45 at 39). Plaintiff McNeill stated that he was consistently recording 40 hours of work a week, regardless of the actual hours worked. (Doc. 45 at 40).

AFCU states that other mortgage loan originators did not have issues with the policies surrounding overtime, submitting declarations from multiple employees stating that they would request permission for overtime, they were never fearful to make a request, and the requests were never denied. (Doc. 45 at 41-42).

In 2020, 2021, and 2022, both Plaintiffs executed mortgage loan originator agreements ("commission agreements") which outline the terms on which mortgage loan originators would receive commissions for their work. (Doc. 45 at 21-22). The agreements stated the following: "To be eligible to receive commissions due hereunder, the Employee must be employed with AFCU on the date that the commissions are due to be paid unless AFCU terminates the employment without cause . . . . If the Employee voluntarily terminates employment with AFCU, any remaining commissions due

hereunder will be forfeited." (Doc. 45 at 23-24); (Doc. 91 at 22). The agreement also states that "[c]ommissions for loans closed each month will be paid on the first feasible payroll date following the last day of each month in which the commissions were earned. Payment of commissions on other payroll dates will be made at the sole discretion of [Defendant]." (Doc. 45 at 23-24); (Doc. 91 at 22).

Plaintiffs state that they were powerless to negotiate these provisions because they needed to sign the agreements to continue their employment. (Doc. 91 at 21). Plaintiffs believe the forfeiture clause was illegal and required Plaintiffs to provide free labor. (Doc. 91 at 21).

Plaintiff Hanson resigned from AFCU on August 15, 2022. (Doc. 45 at 24). Hanson sent an email on August 15, 2025, asserting that she was owed commissions on completed loans. (Doc. 45 at 25-26). The email specifically stated:

> The commissions I am due on my completed loans are as follows:
> Smith $6,000 closed last month and scheduled to be paid out 08/19/2022.
> Nelson $960 closed 08/02/2022
> Geiman $2,900 closed 08/16/2022
> Ruehs $6,000 closing next week and has signed their closing disclosure.
> That's $15,840 of commissions.

(Doc. 45 at 26). Johnston responded to Hanson, stating that AFCU did not owe her the commissions due to her resignation. (Doc. 45 at 27).

Plaintiffs brought suit in Arizona state court, and the action was removed to this Court. (Doc. 1). Plaintiffs' Second Amended Complaint asserted three causes of action: (1) Violation of the Fair Labor Standards Act ("FLSA") by refusing to pay Plaintiffs for overtime hours in excess of 10 hours per week; (2) Violation of the Arizona Fair Wage Act ("AWA") for failing to pay Plaintiff Hanson commissions on all completed loans she originated; (3) Breach of the Duty of Good Faith and Fair Dealing. (Doc. 15 at 6-8). Defendant AFCU moved for summary judgment on all of Plaintiffs' claims. (Doc. 44).

1. Summary Judgment

On December 3, 2025, the Court found that Defendant is entitled to summary judgment on Plaintiffs' FLSA claim (Count I), AWA claim (Count II), and good faith and

fair dealing claim (Count III) as it relates to overtime and performance of job duties allegedly not in the job description and outside the industry standard for loan officers. (Doc. 104). However, the Court denied Defendant's motion for summary judgment on Plaintiffs' good faith and fair dealing claim as it relates to the unconscionability of the commission agreement's forfeiture clause. (Id.) Further, the Court granted summary judgment under Fed. R. Civ. P. 56(f)(1) in favor of Plaintiffs on the unconscionability claim because the Court found that as a matter of law the forfeiture clause is unconscionable as applied to the loans that closed before Plaintiff Hanson resigned. (Id.)

    2. <u>Sanctions</u>

On April 1, 2025, this Court ordered Plaintiffs to pay AFCU $7,596.50 in attorneys' fees incurred in filing AFCU's Motion for Case Terminating Sanctions and Attorneys' Fees (Doc. 46). On June 2, 2025, Plaintiffs filed a Motion to Modify the Court's Order, claiming that their then-counsel, Ernest Collins, Jr. ("Mr. Collins") was responsible for Plaintiffs' failure to follow discovery rules and court orders and thus should be responsible for the ordered fees (Doc. 68). On June 26, 2025, the Court denied Plaintiffs' Motion to Modify Fees. (Doc. 75). Then, on December 9, 2025, Plaintiffs filed another Motion to Modify Sanctions Order. (Doc. 106). On December 23, 2025, Plaintiffs' former counsel, Mr. Collins, filed an Ex Parte Response to Plaintiffs' Motion to Modify Sanctions Order, stating in-part that the Court should deny Plaintiffs' Motion for the reasons set forth in his prior sealed response to the Plaintiffs' previous Motion requesting modification of the Order (Doc. 111). Defendant responded to Plaintiffs' Motion to Modify Sanctions Order. (Doc. 116). Plaintiffs filed a reply. (Doc. 119). Plaintiffs also filed an amended reply (Doc. 121) because the first reply (Doc. 119) was allegedly filed inadvertently.

## II. LEGAL STANDARD

It is within the Court's discretion to reconsider and vacate a prior order. <u>Barber v. Hawaii</u>, 42 F.3d 1185, 1198 (9th Cir. 1994). However, motions for reconsideration are disfavored and should be denied "absent a showing of manifest error or a showing of new

facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv. 7.2(g); see Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000); see also 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) ("[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."). Disagreement with an order is an insufficient basis for reconsideration nor should reconsideration be used to make new arguments or to ask the Court to rethink its analysis. See Nw. Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925–26 (9th Cir. 1988).

### III. DISCUSSION

Plaintiffs seek reconsideration of this Court's prior orders, including the Court's sanctions order (Doc. 46), summary judgment order (Doc. 104), and reconsideration of the total damages awarded to Plaintiff Hanson (Doc. 104). (Docs. 105, 106, 107). Defendants filed responses to Plaintiffs' Motions. (Docs. 115, 116, 117). Plaintiffs filed replies. (Docs. 118, 119, 120, 121).

#### A. Sanctions Order

Plaintiffs filed a Motion to Modify the Sanctions Order at Doc. 46 to have the sanctions be modified to be against their former counsel, Mr. Collins, or waived entirely. (Doc. 106). Plaintiffs contend that their past deficiencies were the result of the former counsel, Mr. Collins', deficient performance and request that the Court modify its sanctions order to be against Mr. Collins or remove the sanctions all together. (Id. at 1-3).

On December 23, 2025, Mr. Collins filed an ex parte response to Plaintiffs' Motion to Modify Sanctions Order. (Doc. 111). Mr. Collins argues that the Court should deny Plaintiffs' Motion because (1) Plaintiffs previously filed a motion for reconsideration of the sanctions order, and (2) the shifting of sanctions from the Plaintiffs to Mr. Collins is unwarranted. (Id.)

On January 15, Defendant filed a response arguing that the Court should not

change its prior sanctions order because this is not the right forum to resolve the dispute between Plaintiffs and their former counsel. (Doc. 116). Further, Defendant contends that Plaintiffs should remain responsible for paying Defendant's fees because it incurred those fees due to multiple failures on Plaintiffs' side and the Court already determined that Defendant should be compensated for incurring those fees. (Id. at 2).

In evaluating motions for reconsideration, it is only appropriate for the court to modify its previous order if the court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Due to the outcome of this case, the Court finds that its initial decision to issue monetary sanctions on Plaintiffs is now "manifestly unjust." Id.; (Doc. 46). Plaintiffs are the successful party in their unconscionability claim. (Doc. 104). Thus, it is unjust for a substantial portion of the judgment awarded to be deducted to pay Defendant's attorney fees. Also, while the Court agrees that this is not the appropriate forum to resolve the dispute between plaintiffs and their former counsel, the filings in this Court since the award of attorney's fees clearly demonstrate the breakdown in communication between plaintiffs and their former counsel. (See Docs. 106, 111, 119, 121). Accordingly, the Court grants Plaintiffs' Motion to Modify Sanctions Order (Doc. 106) and modifies its previous sanctions order (Doc. 46) to waive the monetary sanction.

### B. Motion for Treble Damages for Unpaid Earned Wages

Plaintiffs request that the Court treble its previous award of $9,860 in unpaid commissions. (Doc. 107). Plaintiffs contend that they should be awarded treble damages because Defendant "had no good faith basis for a forfeiture of Plaintiff's earned sales commissions." (Id. at 2). In response, Defendant contends that "[t]here is no legal basis for trebling Plaintiff Hanson's contract-based commission damages." (Doc. 115 at 2).

Under the Arizona Wage Act, treble damages are not automatic. See D'Amico v. Structural I Co., 229 Ariz. 262, 265, 274 P.3d 532, 535 (Ct. App. 2012) ("Section 23–

355(A) plainly does not impose treble damages whenever an employer withholds wages."); A.R.S. § 23-355(A)("if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.").

Further, another section of the Arizona Wage Act, A.R.S. § 23-352, explains that employers may not withhold or divert an employee's wages unless they are required to do so by law, have prior written authorization from the employee to do so, or "[t]here is a reasonable good faith dispute as to the amount of wages due[.]" Relying on the good faith dispute exception in Section 23-352, the Arizona Court of Appeals has stated that "treble damages may not be awarded pursuant to A.R.S. § 23–355(A) when an employer withholds wages subject to a good-faith dispute." D'Amico, 229 Ariz. at 265, 274 P.3d at 535 (citing Apache East, Inc. v. Wiegand, 119 Ariz. 308, 312, 580 P.2d 769, 773 (App. 1978)).

Plaintiffs argue for treble damages by claiming that AFCU "had no good faith basis for a forfeiture of Plaintiff's earned sales commissions." (Doc. 107 at 2). However, as Defendant contends, Plaintiffs' assertion directly contradicts this Court's December 3, 2025, Order, where this Court stated that Plaintiff Hanson had not produced any evidence that Defendant had acted in bad faith by not paying her certain commissions consistent with the terms of her contract. (Docs. 104 at 13; 115 at 3). As this Court previously stated, there was a good faith dispute about whether Defendant owed Plaintiff Hanson her commissions and the Court concluded that Plaintiff Hanson had no reasonable expectation that she would receive those commissions. (Id.) Defendant contends that "[i]f Plaintiff Hanson could not have reasonably expected to receive those wages, then AFCU could not have reasonably expected to be required to pay them." (Doc. 115 at 3). The Court agrees with Defendant that there was a good faith dispute as to the amount of wages due to Plaintiff Hanson, so the Court cannot award Plaintiff treble damages as a matter of law.

Additionally, this Court awarded Plaintiff Hanson her commissions based on the

unconscionability of her employment contract under the implied covenant of good faith and fair dealing. (Doc. 104). Under Arizona law, a party is limited to contract damages for breach of contract under the implied covenant of good faith and fair dealing. Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund, 201 Ariz. 474, 491, 38 P.3d 12, 29 (2002), as corrected (Apr. 9, 2002); see also United Dairymen of Arizona v. Schugg, 212 Ariz. 133, 138-39, 128 P.3d 756, 761-62 (Ct. App. 2006); see also Beaudry v. Ins. Co. of the W., 203 Ariz. 86, 50 P.3d 836 (Ct. App. 2002), as amended (July 26, 2002). Accordingly, the Court denies Plaintiffs' Motion for Treble Damages. (Doc. 107).

### C. Motion for Reconsideration of Summary Judgment Order

Plaintiffs seek reconsideration of the Court's prior Order granting in-part and denying in-part Defendant's Motion for Summary Judgment. (Doc. 105). In its response, Defendant contends that Plaintiffs simply rehash their prior arguments that the Court already considered and rejected. (Doc. 117).

Reconsideration is only appropriate if the Court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. ACandS, Inc., 5 F.3d at 1263 (citations omitted); see LRCiv 7.2(g)(1) ("The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."). Further, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Kona Enters., Inc., 229 F.3d at 890 (citation omitted).

The Court agrees with Defendant that Plaintiffs simply rehash prior arguments raised in their response and reply to Defendant's motion for summary judgment, have not demonstrated how the Court committed clear error in its prior order, or that there were any intervening changes in controlling law. (Docs. 105, 117); ACandS, Inc., 5 F.3d at 1263. Also, a party having "an epiphany" is not a basis for vacating a prior order. (Doc.

118 at 2). Accordingly, the Court denies Plaintiffs' Motion for Reconsideration of its summary judgment order. (Doc. 105).

### IV. CONCLUSION

Accordingly, for the reasons set forth,

**IT IS ORDERED denying** Plaintiffs' Motion for Reconsideration of the Court's summary judgment order (Doc. 104) **with prejudice**. (Doc. 105)

**IT IS FURTHER ORDERED granting** Plaintiffs' Motion to Modify Sanctions Order. (Docs. 46, 106).

**IT IS FURTHER ORDERED denying** Plaintiffs' Motion for Treble Damages **with prejudice**. (Doc. 107).

**IT IS FURTHER ORDERED directing** Defendant to pay Plaintiff Laura Hanson in the amount of $9,860.00, accruing post-judgment interest pursuant to 28 U.S.C. § 1961 until the judgment is paid in full.

**IT IS FURTHER ORDERED directing** the Clerk of Court to enter judgment and terminate this case.

Dated this 3rd day of February, 2026.

_____
Stephen M. McNamee
Senior United States District Judge